KARI M. LARSON
Senior Litigation Counsel
KAVITHA BONDADA
Trial Attorney
U.S. Department of Justice, Tax Division
Post Office Box 227
Ben Franklin Station
Washington, D.C.  20044
Telephone:	(202) 616-3822
	(202) 307-6536
Fax:	(202) 514-6866
Email:	Kari.M.Larson@usdoj.gov
	kavitha.bondada@usdoj.gov
*Counsel for Respondent United States of America*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

| | |
|---|---|
| CHRONIC DISEASE FUND, INC.,<br><br>Petitioner,<br><br>--against--<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No.  2:17-cv-1082-JMV-JBC |

**UNITED STATES' REPLY IN SUPPORT OF ITS PETITION TO ENFORCE IRS SUMMONS ISSUED TO THIRD-PARTY JOHNSON & JOHNSON**

Chronic Disease Fund, Inc. ("CDF") operates a co-pay assistance program.  The Internal Revenue Service ("IRS") is investigating CDF's right to retain its tax-exempt status, and in particular, whether CDF is providing pharmaceutical manufacturer "donors" an impermissible private benefit by returning almost all of their "donated" funds to them as payments for their own drugs ("2011 Examination").  This dispute involves the validity of one of a series of summonses issued to CDF's pharmaceutical manufacturer "donors" as part of the 2011 Examination.

Following initial briefing, three categories of requested documents remain in dispute: two categories relating to communications about CDF's co-pay assistance program, and one category relating to the economic benefits pharmaceutical manufacturer "donors" receive from CDF's co-pay assistance program.[1]  CDF claims these requests seek irrelevant information, and that they are overbroad and burdensome.  As demonstrated here, and in the United States' opening brief and supporting declaration of Revenue Agent Tai, the requested information is relevant to the IRS investigation.  Moreover, the information is sought from the "donor" pharmaceutical manufacturer, Johnson & Johnson, not from CDF.  Johnson & Johnson has a statutory right to intervene and assert that the summons is overly broad or burdensome, but has not done so.  CDF is not required to respond to the summons, and therefore lacks standing to raise such objections.  As such, the summons should be enforced and CDF's remaining objections denied.

**I.     ARGUMENT**

> *A.   The IRS is Permitted to Investigate Whether CDF's Operation as a Conduit Provides an Impermissible Private Benefit to its Pharmaceutical Manufacturer "Donors"*

CDF's claim—that the IRS is not entitled to summon documents from third parties that a taxpayer may not have seen—is specious.  First, it is erroneous to suggest that the IRS cannot investigate federal tax matters, in the manner it thinks warranted, in the absence of prior decisions precisely supporting such an approach.  The Supreme Court made clear in *Powell* that the IRS need not establish the underlying merits of a tax position relating to a summons, because such a requirement "…might seriously hamper the Commissioner in carrying out investigations

---

[1] The IRS summons sought twelve categories of information.  CDF sought to quash the summons, but originally only challenged eight of the twelve categories.  In its motion for enforcement, the United States did not seek enforcement of three requests.  CDF, in turn, withdrew its objections to two requests.  Only three categories remain in dispute.

he thinks warranted, forcing him to litigate and prosecute appeals on the very subject which he desires to investigate." *United States v. Powell*, 379 U.S. 48, 54 (1964). Such a standard would be "…an invalid restraint on the summons power of the IRS." *United States v. White,* 853 F.2d. 107, 116 (2d Cir. 1988) (reversing denial of enforcement where district court standard required IRS to "litigate and prosecute an appeal on the very subject it desires to investigate.").

Instead, the IRS may investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57 (*quoting United States v. Morton Salt Co.,* 338 U.S. 632, 642-43 (1950)). And, it may do so in the manner in which it sees fit, so long as the summoned information might "illuminate any aspect of the return." *United States v. Arthur Young*, 465 U.S. 805, 815 (1984). "[I]t is for the agency, and not the taxpayer, to determine the course and conduct of an audit, and 'the judiciary should not go beyond the requirements of the statute and force the IRS to litigate the reasonableness of its investigative procedures.'" *United States v. Norwest Corp.*, 116 F.3d. 1227, 1233 (8th Cir. 1997) (affirming case of first impression enforcing summons seeking tax preparation software that contained no direct information about the taxpayer) (quoting *United States v. Clement*, 668 F.2d 1010, 1013 (8th Cir. 1982)).

Here, where CDF appears to be operating as a conduit for its pharmaceutical manufacturer "donors," the IRS is permitted—and should—investigate how this is being accomplished. Whether an entity is functioning as a conduit is a broad and multi-faceted inquiry—and by extension, an investigation rather than a merits trial should be even more so. *See, e.g., Merck & Co. v. United States,* 652 F.3d 475, 484-85 (3d Cir. 2011) (citations omitted) (finding entity to be serving as a conduit, based on several factors and types of evidence). CDF seems to suggest that because its "own *internal* purpose" is the focus of the 2011 Examination,

the investigation should be limited to documents that CDF has seen; this assertion is misleading. Because CDF is *operated*—that is, how it in fact conducted itself and its operations—in a manner that provides a private benefit to a third party, its tax exempt status may be in jeopardy. *Taxation with Representation v. United States*, 585 F.2d 1219, 1222 (4th Cir. 1978) (*citing Samuel Friedland Foundation v. United States,* 144 F.Supp. 74, 85 (D.N.J. 1956)).  Such an inquiry need not be limited to CDF's own claims and documents regarding its purpose and operation, but instead can and should be based on all evidence that might reveal whether an impermissible private benefit is being conferred.  *Am. Campaign Acad. v. Comm'r*, 92 T.C. 1053, 1073 (1989) (finding impermissible private benefit, based in part on organization's own documents, but also on external evidence).

In any event, this is an IRS investigation, not a merits trial.  The requested documents may shed light on the manner in which CDF is operated, and whether that allows it to serve as a conduit for its pharmaceutical manufacturer "donors."  If and when CDF's tax exempt status is before a court, the decision maker will need to determine whether CDF is providing an impermissible private benefit to its pharmaceutical manufacturer "donors," and whether it is entitled to retain its tax exempt status.  The question before this Court during the examination is whether the request seeks information relevant to the examination.

>    B.   *CDF Continues to Misconstrue the Relevance Standard Relating to Summons Enforcement Matters.*

CDF's suggestion that the summons seeks "irrelevant" information confuses the relevance standard applicable to summons enforcement with relevance concepts under the Federal Rules of Evidence and Civil Procedure.  "[T]he concept of relevance under § 7602 is broader than that under the Federal Rules of Evidence." *Zugerese Trading LLC v. Internal Revenue Service,* 2009 WL 1706583, (5th Cir. 2009) (*citing Arthur Young & Co.,* 465 U.S. at

4

813–14 n. 11).  Instead, as explained by the Supreme Court, Congress granted the IRS much broader investigative tools:

> The language "may be" [in § 7602] reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation… The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized.  As a tool of discovery, the § 7602 summons is critical to the investigation and enforcement functions of the IRS; the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.

*Arthur Young & Co.,* 465 U.S. at 814 (emphasis in original).  "*Potential* relevance to an ongoing investigation" is not determined according to what evidence the IRS might ultimately offer at a trial challenging CDF's tax exempt status.  Instead, the test regarding summons enforcement is whether such information might shed light on the question.  *Id.*  Accordingly, CDF's suggestions in this regard are misguided.

CDF's primary assertion, that documents belonging to third party pharmaceutical companies, which CDF may have never seen, are "irrelevant," is erroneous.  First, recognizing CDF's willingness to concede certain other summons requests, the United States concedes that request ten need not be enforced in its entirety in order to provide the IRS with the information it seeks.  Instead, request ten could be narrowed such that only communications relating to CDF's co-pay assistance program need be produced:

> Provide all correspondence in any form, including but not limited to, paper and electronic and all documents memorializing conversations, between Johnson & Johnson and any physicians, pharmacies, hospitals, or physician practices in 2011, *relating to CDF's co-pay assistance program, and* relating to any drugs used to treat disease states for which Johnson & Johnson made donations to CDF in 2011.

5

Such a limitation would ensure that responsive documents relate to CDF's co-pay assistance program. *See, e.g., United States v. Luther,* 481 F.2d 429, 433 (9th Cir. 1973) (enforcing summons but limiting enforcement to materials relating to transactions between the taxpayer and a corporation).

That limitation aside, CDF's claims—that third-party documents, and in particular, communications and statistical analysis it hasn't seen, have no bearing on its tax exempt status—are misguided. First, as explained above, this is a summons enforcement proceeding, not a trial on the merits. As such, the question is not whether the IRS can show today that the documents will establish whether CDF may maintain its tax exempt status. The question is whether the documents *may be* useful to the IRS' investigation.

Second, the notion that such third-party documents are not useful in an examination is unfounded. The IRS regularly seeks and obtains third-party documents, which taxpayers may have never seen, in order to investigate the correctness of a return. *See e.g., Sugarloaf Funding, LLC v. United* States, 584 F.3d 340 (1st Cir. 2009) (enforcing third-party summons over taxpayer's objection that third-party internal documents are irrelevant to its own liability). In civil discovery, which has a more stringent standard for relevance, the United States regularly seeks and obtains third-party documents, which taxpayers may have never seen, in a wide variety of tax disputes. *See, e.g., Jade Trading, LLC v. United States,* 64 Fed.Cl. 188 (Fed.Cl. 2005) (ordering enforcement of discovery subpoena served on third-party promoter seeking tax returns of non-party clients). The United States also routinely offers as evidence documents obtained from third parties that the taxpayer may have never seen; and courts rely on those documents from third parties in determining tax matters. *See, e.g., Salem Financial, Inc. v. United States,* 786 F.3d 932, 958-59 (Fed. Cir. 2015) (upholding negligence penalty because taxpayer's claimed

reliance on promoter's tax opinion was not reasonable, citing promoter's internal memorandum not shared with taxpayer in support).  The suggestion that at the exam stage, the IRS should be prohibited from obtaining third party documents because they were not ever seen by the taxpayer, is meritless.

As we explained in detail, both in our prior briefing and as set forth in the declaration of Revenue Agent Tai, these requested documents may shed light on whether CDF is providing an impermissible private benefit to its "donors," because they may reveal:

- How CDF is able, in practice, to operate as conduit for its "donors," despite its claims to the IRS to the contrary;

- Whether CDF's pharmaceutical manufacturer "donors" anticipated that CDF would operate as a conduit, and on what information that understanding is based;

- What claims or assurances CDF may have provided to its "donors" regarding expected economic benefits, benefits relating to market share, and any other benefits from participating in CDF's program;

- Whether CDF made assurances or claims to its "donors" that donated funds would be returned to the "donor" in the form of co-pay assistance for that donor's drugs, and not to competitor drug makers;

- Whether the "donors" had concerns about CDF's program (and in particular the degree to which "donations" would be returned in the form of co-pay assistance), and on what information those concerns were based;

- Whether the pharmaceutical manufacturer "donors" received information from CDF, directly or indirectly, that facilitated analysis of the economic and other benefits provided by participation;

- Whether, despite CDF's claims that it is not permitted to, nor does it, provide data that would facilitate correlation of the number of subsidized prescriptions with the amount of the pharmaceutical manufacturer's donations, the summoned information may reveal whether that claim is correct.

The United States has demonstrated that the summoned information may shed light on CDF's operations.  The summoned information is relevant.

### C. *CDF Lacks Standing to Challenge the Summons on Any Other Grounds*

CDF also contends that the summons is overbroad and that responding would be burdensome. But CDF lacks both standing and the evidentiary foundation to make this objection. CDF is attempting to make arguments available only to the summoned party, which CDF has no standing to assert. Referring to the legislative history of 26 U.S.C. § 7609, the court in *Wright v. United States*, 964 F. Supp. 336, 338 (M.D. Fla.), *aff'd without opinion,* 132 F.3d 1461 (11th Cir. 1997), observed: "This passage makes clear that § 7609 was intended to permit the taxpayer to raise issues that relate to an interest in nondisclosure of information, but not to allow the taxpayer to assert issues that are of meaningful concern only to the third-party recordkeeper because they involve its burden to produce information." Notably, no summoned party has of yet intervened.[2] CDF is not the appropriate party to raise such objections—as only the summoned party knows whether it might have any responsive documents—much less how burdensome it might be to collect, review and produce them. *Solid Waste Servs., Inc. v. United States*, 2016 WL 690266, at *5–6 (E.D. Pa. 2016), *report and recommendation adopted*, 2016 WL 687182 (E.D. Pa. 2016) (collecting cases and finding taxpayers do not have standing to challenge third-party summonses on grounds of over-breadth).

---

[2] This summons is one of a series of summons issued to CDF's pharmaceutical manufacturer "donors." Six petitions to quash have been filed: *See Chronic Disease Fund, Inc. v. United States*, No. 17-cv-721 (N.D. Cal.); *Chronic Disease Fund, Inc. v. United States*, No. 17-cv-942 (D.N.J.); *Chronic Disease Fund, Inc. v. United States*, No. 17-cv-1082 (D.N.J.); *Chronic Disease Fund, Inc. v. United States*, No. 17-cv-304 (W.D. Pa.); *Chronic Disease Fund, Inc. v. United States*, No. 17-cv-322 (W.D. Pa.); and *Chronic Disease Fund, Inc. v. United States*, 17-mc-00687-CKK (D.D.C.). The United States has engaged in discussions with some summons recipients (and CDF) regarding limiting the number of employees and data sources from which documents responsive to the summons might be collected, so as to avoid the review and production of duplicative information. We welcome the opportunity to have similar discussions with the remaining summoned parties. But to be clear, these discussions are not focused on narrowing the subject matter of the requests themselves, but are instead focused on the number of custodians or sources of data.

Even if CDF had standing, the summons is not overbroad, because it: "specifie[s] the subject matter of the documents requested, the source of those documents and the limited time period from which the documents [a]re to be drawn." *Miccosukee Tribe of Indians of Florida v. United States*, 698 F.3d 1326, 1332–33 (11th Cir. 2012) (quotations omitted).  These contested requests make clear the subject matter sought, the source of the documents, and the time period from which they should be drawn, and CDF does not suggest any deficiency in this regard.

In any event, CDF itself cannot attest to the burden a third party may or may not face in responding to a summons, as CDF does not have first-hand knowledge as to Johnson & Johnson's system of records—or for that matter, whether Johnson & Johnson maintains any records at all from this time period.  And a naked allegation of burden, without more, is insufficient.  *See United States v. Chevron,* 186 F.3d 644, 649-50 (5th Cir. 1999).  CDF makes no specific assertion on Johnson & Johnson's behalf to establish that compliance with the summons would be unduly burdensome, only claiming in an abstract manner that the requests are burdensome and that responding would cause a "tremendous disruption."  Without a declaration, or any evidence at all supporting CDF's contention regarding Johnson & Johnson's hypothetical burden, this objection is without foundation.

## II.     CONCLUSION

For the reasons set forth above, the IRS summons served on pharmaceutical manufacturer Johnson & Johnson should be enforced, and CDF's petition to quash should be denied. A revised proposed order is submitted herewith, which incorporates the United States' proposed limitation to request ten.

DATE: June 23, 2017	WILLIAM E. FITZPATRICK
	Acting United States Attorney

	DAVID HUBBERT
	Acting Assistant Attorney General, Tax Division

	By:   /s/ Kari M. Larson
	KARI M. LARSON
	Senior Litigation Counsel
	KAVITHA BONDADA
	Trial Attorney
	U.S. Department of Justice, Tax Division
	Post Office Box 227
	Ben Franklin Station
	Washington, D.C.  20044

	Telephone:	(202) 616-3822
			(202) 307-6536
	Fax:		(202) 514-6866
	Email:		Kari.M.Larson@usdoj.gov
			kavitha.bondada@usdoj.gov
	*Counsel for Respondent United States of America*